Henderson County v. Osteen

HENDERSON COUNTY AND LINCOLN K. ANDREWS v. FRANK OS-
TEEN (NOW DECEASED), HARLEY OSTEEN (IN HIS CAPACITY AS AD-
MINISTRATOR OF THE ESTATE OF FRANK OSTEEN), AND ELLIE O.
CHEATWOOD, UFAULA O. STEPP, HAZEL O. STEVENSON,
BLANCHE O. KING, HARLEY OSTEEN, SYLVENE O. SPICK-
ERMAN, GRETA O. ALLEN, JEAN O. HOLDEN, MITCHELL M.
OSTEEN, CARL M. OSTEEN, MARTHA SUE O. BROWN, JAMES
D. OSTEEN AND THELMA O. TAYLOR, AS ALL THE HEIRS AT LAW
OF FRANK OSTEEN, DECEASED

No. 7529SC561

(Filed 18 February 1976)

1. **Execution § 3— personal money judgment — execution after death of
debtor barred**

Execution on a personal money judgment after the death of the
debtor is barred, and the holder of the judgment must look to the duly

Henderson County v. Osteen

appointed administrator for payment of the judgment according to the priorities prescribed by G.S. 28A-19-6.

2. **Execution § 3— tax judgment — execution after death of taxpayer not barred**

A tax judgment pursuant to former G.S. 105-392 is strictly *in rem,* a specific judgment against the property of the listed taxpayer, and tantamount to a judgment directing the sale of the property to satisfy the tax lien; therefore, the death of the taxpayer before execution of the judgment is immaterial, and the trial court erred in relying on the rule of *Flynn v. Rumley,* 212 N.C. 25, precluding the execution of an *in personam* money judgment after death of the debtor in this case involving an *in rem* tax judgment executed subsequent to the death of the taxpayer.

3. **Taxation § 40— execution upon tax judgment — notice required**

Execution sale of property under a docketed tax judgment pursuant to former G.S. 105-392 was not rendered void by failure of the taxing authority to give registered or certified mail notice to the listing taxpayer at his last known address prior to the execution sale as required by former G.S. 105-392(c), since the notice requirement of the statute is directory and not mandatory.

4. **Taxation § 40— execution sale — death of taxpayer — notice to heirs — no due process requirement**

Due process did not require that a county give notice of a tax judgment execution sale to the administrator or heirs of a listing taxpayer who died prior to issuance of execution since due process was satisfied when the listing taxpayer was notified under G.S. 105-392(a) that the judgment would be docketed and that execution would issue thereon in the manner provided by law.

5. **Execution § 15; Taxation § 44— tax sale — attack on sale for lack of notice — one year statute of limitations**

Though the notice requirement of former G.S. 105-392(c) is directory, failure to furnish this notice may expose the sale to attack, if coupled with any other inequitable element, provided such action is brought within the pertinent statute of limitations; therefore, defendants who filed a motion in the cause seeking to set aside a tax sale of property more than four years after the execution sale were barred by the one-year statute of limitations imposed by G.S. 105-393.

APPEAL by Lincoln K. Andrews from *Friday, Judge.* Judgments entered 12 March 1975 and 9 April 1975 in Superior Court, HENDERSON County. Heard in the Court of Appeals 20 October 1975.

This action had its inception in proceedings instituted in 1969 by Henderson County to collect delinquent taxes on the property of Frank Osteen for the year 1967. The proceedings to establish the lien and to sell the property are governed by former G.S. 105-392 (This statute was amended and recodified

by Chapter 806, Section 1 of the 1971 Session Laws effective 1 July 1971.). Judgment was entered 1 October 1969 in favor of Henderson County for the amount of taxes owed. Frank Osteen died on 17 July 1970. On 22 July 1970 the Clerk of Superior Court issued execution on the judgment, and in compliance therewith the foreclosure sale was conducted on 26 August 1970. Lincoln K. Andrews became the last and highest bidder. The sale was confirmed on 15 September 1970, and the sheriff executed his deed to Lincoln K. Andrews, who duly recorded the same on 15 September 1970.

On 7 October 1974 Harley Osteen, administrator of the estate of Frank Osteen, and James D. Osteen, an heir at law of Frank Osteen, purporting to act under the provisions of Rules 19, 20, 22, 25, and 60(b)6 of the Rules of Civil Procedure, filed a motion in the cause seeking, in substance, the following relief:

a. The joinder of Lincoln K. Andrews as a necessary party plaintiff to the action;

b. The joinder of Harley Osteen, administrator of the decedent's estate, as a necessary party defendant to the action;

c. The joinder of certain named individuals, including the movants, as proper party defendants to the action;

d. The issuance of an order setting aside the sale of the subject property to Lincoln K. Andrews on the grounds that (1) Henderson County failed to comply with statutory notice requirements resulting in irregularities in the execution and sale, and (2) attorneys advising the adminstrator of the estate of the decedent acted improperly; and

e. The issuance of an order compelling Lincoln K. Andrews to quitclaim his interest in the property to the decedent's heirs.

On 3 December 1975 Lincoln K. Andrews filed a response to the motion in the cause denying that movants were entitled to the relief prayed.

By order dated 19 December 1974 Lincoln K. Andrews was made a party plaintiff, and Harley Osteen, as administrator of Frank Osteen, and the remaining named defendants, as the heirs at law of Frank Osteen, were made parties defendant.

On 14 February 1975 plaintiff Andrews filed a Rule 12 (b) 6 motion to dismiss for failure of defendants' motion to state a claim upon which relief could be granted. In the alternative plaintiff sought summary judgment under Rule 56 upon the grounds that there was no genuine issue as to any material fact. By order entered 12 March 1975 both motions by plaintiff were denied.

On 19 March 1975 a hearing upon the merits of defendants' motion was held before Judge Friday without a jury. Upon the evidence presented, Judge Friday made findings of fact and entered judgment on 9 April 1975 as follows:

"1. That judgment was docketed in favor of Henderson County for nonpayment of real property taxes on October 1, 1969 covering Lots 67 through 75 and one unnumbered lot in Hillside Park Subdivision as recorded in Plat Book 1, page 162, Henderson County Registry, the property of Frank Osteen.

"2. That Frank Osteen died on July 17, 1970 in Henderson County, North Carolina.

"3. That execution on the docketed judgment in favor of Henderson County was issued on the 22nd day of July, 1970, five (5) days after the date of death of Frank Osteen.

"4. That Harley Osteen qualified as Administrator of the Estate of Frank Osteen on the 27th day of July, 1970.

"5. That the property was sold at Sheriff's sale on August 26th, 1970 to Lincoln K. Andrews, the last and highest bidder, for the sum of $21.42.

"6. That the sale was confirmed and the property was deeded to Lincoln K. Andrews by deed dated the 15th day of September, 1970 and recorded in Deed Book 478 at page 37, Henderson County Registry.

"7. That at the time the property was sold to Lincoln K. Andrews for $21.42, the property had a value of approximately $12,000.00.

"8. That no notice of the execution sale was given to the Administrator or the heirs at law of Frank Osteen.

"And the Court being of the opinion that the case of FLYNN v. RUMLEY, 212 N.C. 25 at page 27 is controlling in this cause;

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the sale of Lots 67 through 75 and one unnumbered lot in Hillside Park Subdivision as recorded in Plat Book 1 at page 162, Henderson County Registry, by the Sheriff of Henderson County to Lincoln K. Andrews is void and the sale is hereby set aside and cancelled as of record.

"IT IS FURTHER ORDERED that the Clerk of this Court certify a copy of this Order to the Register of Deeds of Henderson County so that the same may be recorded in the Office of the Register of Deeds and that the recordation thereof be a cancellation of the Deed of the Sheriff of Henderson County to Lincoln K. Andrews.

"IT IS FURTHER ORDERED that Harley Osteen as Administrator of the Estate of Frank Osteen pay to Lincoln K. Andrews the Henderson County real property taxes for the years 1967 through 1974 plus interest thereon and costs in accordance with G.S. 105-375 (g).

"IT IS FURTHER ORDERED that upon receipt of the Henderson County real property taxes, interest and costs for the years 1967 through 1974, that Lincoln K. Andrews execute a Quitclaim Deed, for the property that is the subject of this action, in favor of Harley Osteen as Administrator of the Estate of Frank Osteen."

Plaintiff Andrews appealed.

*Prince, Youngblood & Massagee, by James E. Creekman, for plaintiff.*

*James C. Coleman, for defendants.*

BROCK, Chief Judge.

The first question presented by this appeal is whether the trial court properly relied upon *Flynn v. Rumley*, 212 N.C. 25, 192 S.E. 868 (1937), to invalidate the sale of Frank Osteen's property, after his death, pursuant to former G.S. 105-392 (now G.S. 105-375).

Henderson County v. Osteen

In the *Flynn* case the appellant obtained a valid *in personam* money judgment against one W. T. Latham; the judgment was duly docketed. Thereafter Latham conveyed all of his property to his sons and died intestate. After his death execution was issued upon the judgment, and appellant attempted to compel the sheriff to levy upon the land Latham had conveyed before his death. An action for *mandamus* was brought against the sheriff. The trial court dismissed the action and the Supreme Court affirmed: "The execution, having been issued after the death of the judgment debtor, was not warranted by law. A sale of the land made under the execution would be void." *Flynn v. Rumley, supra.* Thus *Flynn* prohibits execution of an *in personam* money judgment *after* the death of the judgment debtor.

[1] The prohibition against the execution of an *in personam* money judgment after the death of the judgment debtor is designed to facilitate the orderly administration of the decedent's estate. *See Sawyers v. Sawyers,* 93 N.C. 321 (1885); *Lee v. Eure,* 82 N.C. 428 (1880). General Statute 28A-19-6 (formerly G.S. 28-105) governs the order in which decedent's debts must be paid by the administrator from the personalty of the estate. The fifth class of debts to be paid consists of "judgments of any court of competent jurisdiction within this State, docketed and in force, to the extent to which they are a lien on the property of the deceased at his death." Therefore, execution on a personal money judgment after the death of the debtor is barred. The holder of the judgment must look to the duly appointed administrator for payment of the judgment according to the priorities prescribed by G.S. 28A-19-6.

[2] Unlike the *in personam* money judgment discussed above, this case involves the execution of a tax judgment pursuant to former G.S. 105-392. When a taxpayer neglects to pay local property taxes, the county acquires a lien against the real property listed for taxes and is authorized to sell these tax liens to private parties or units of government. *See* G.S. 105-369 (formerly G.S. 105-387). Normally the purchaser of the tax lien is issued a certificate of sale. At this juncture the holder of the certificate of sale can either (1) seek foreclosure on the tax lien by an action in the nature of an action to foreclose a mortgage as provided by G.S. 105-374 (formerly G.S. 105-391) or (2) if the holder is a unit of government, resort to the *in rem* method of foreclosure under G.S. 105-375 (formerly G.S. 105-392).

Former G.S. 105-392 was enacted to provide a simple and efficient alternative for a taxing unit to the foreclosure of tax liens provided by former G.S. 105-391.

"§ 105-392. *Alternative method of foreclosure.*— (a) Docketing Taxes as a Judgment.—In lieu of following the procedure set forth in § 105-391, the governing body of any taxing unit may order the collecting official to file, not less than six months or more than two years (four years as to taxes of the principal amount of five dollars or less) following the collector's sale of certificates, with the clerk of superior court a certificate showing the name of the tax-payer listing the real estate on which such taxes are a lien, together with the amount of taxes, interest, penalties and costs which are a lien thereon, the year for which such taxes are due, and a description of such real property sufficient to permit its identification by parol testimony. The clerk of superior court shall enter said certificate in a special book entitled 'Tax Judgment Docket for Taxes for the Year _____' and shall index the same therein in the name of the listing taxpayer. . . . Immediately upon said docketing and indexing, said taxes, interest, penalties and costs shall constitute a valid judgment against said property, with the priority hereinbefore provided for tax liens, . . . "

Thus, in simple fashion, the certificate of sale in the hands of the taxing unit is converted into a docketed judgment. The peculiar nature and effect of this judgment is carefully defined:

"[This tax judgment] shall have the same force and effect as a duly rendered judgment of the superior court directing sale of said property for the satisfaction of the tax lien, and which judgment shall bear interest at the rate of six per cent per annum." (G.S. 105-392[a]).

In other words, the tax judgment is strictly *in rem,* a specific judgment against the property of the listed taxpayer, and tantamount to a judgment directing the sale of the property to satisfy the tax lien. In contrast, the *in personam* judgment does not embody an order directing the sale of particular property of the debtor to satisfy the judgment. While the docketing of an *in personam* judgment does impose a general lien on the debtor's real property, the judgment is directed against the person of the debtor.

As a judgment against the property of the listed taxpayer, directing the sale of the property to satisfy the tax lien, the tax judgment established under former G.S. 105-392 (now G.S. 105-375) is not a "debt" within the meaning of G.S. 28A-19-6, nor does it affix a lien to the taxpayer's property. It represents a final order for the sale of the delinquent taxpayer's property. Once the tax judgment is docketed, the real property described in the judgment is subject to impending foreclosure, provided execution is properly issued. Given the unique nature of the judgment, the death of the taxpayer before execution of the judgment is immaterial. Once judgment against the land is rendered and docketed, the fate of the property described therein is inexorably set into motion. And unless the taxes due are paid before the actual sale of the property, the property can be sold upon execution whether the execution is issued before or after the death of the taxpayer.

In conclusion, the rule in *Flynn* which precludes execution of an *in personam* money judgment does not apply to the *in rem* method of foreclosure defined by former G.S. 105-392. We find error in the trial court's reliance upon *Flynn* to invalidate the foreclosure sale of property in this case.

Even if *Flynn* is inapplicable to the facts of this case, it is argued that the County's failure to comply with the notice requirement of former G.S. 105-392(c) renders the execution sale void and thus enables defendants to set aside the sale beyond the short statute of limitations imposed by former G.S. 105-393. Therefore, defendants argue the trial judge's finding "that no notice of the execution sale was given to the Administrator or the heirs at law of Frank Osteen" should suffice, by itself, to affirm the judgment entered in favor of the defendant heirs of Frank Osteen.

[3] Defendants' evidence tends to show that the County did not furnish "registered or certified mail notice . . . to the listing taxpayer, at his last known address" prior to the execution sale as prescribed by G.S. 105-392(c). At least, the County failed to produce receipt of the necessary registered mail notice to refute the defendants' evidence that no such letter notice had been mailed to the listing taxpayer either before or after his death. Assuming that the notice was not, in fact, mailed to Frank Osteen, we must decide whether the defective notice renders the execution sale void as a matter of law.

In considering the notice requirements of former G.S. 105-392, we are mindful of the overall purpose of the proceedings and the reasonable presumption of notice expressed in the statute (G.S. 105-392[a]) :

> "It is . . . declared to be the intention of the section to provide a simple and inexpensive method of enforcing payment of taxes necessarily levied, to the knowledge of all, for the requirements of local governments in this State; and to recognize, in authorizing such proceeding, that all those owning interests in real property know, or should know, without special notice thereof, that such property may be seized and sold for failure to pay such lawful taxes."

This provision corresponds with G.S. 105-348 (formerly G.S. 105-377), which explicitly charges "all persons who have or may acquire any interest in any property" with notice "that such property is or should be listed for taxation, that taxes are or may become a lien thereon, and that if taxes are not paid the proceedings allowed by law may be taken against such property. *This notice shall be conclusively presumed, whether or not such persons have actual notice.*" (Emphasis added.)

According to G.S. 105-392(c), execution shall be issued "in the same manner as executions are issued upon other judgments of the superior court, and said property shall be sold by the sheriff in the same manner as other property is sold under execution: Provided, that no debtor's exemption shall be allowed; and provided, further, that in lieu of any personal service of notice on the owner of said property, registered or certified mail notice shall be mailed to the listing taxpayer, at his last known address, at least one week prior to the day fixed for said sale." The meaning and underlying intention of this provision is abundantly clear: The County must make a reasonable effort to apprise the listing taxpayer of the impending execution sale by mailing registered or certified notice to the taxpayer's last known address. Personal service of notice is clearly not required, nor is notice to the actual owner of the property at the time of the issuance of execution, in this case the heirs of Frank Osteen. Moreover, it is not necessary that the listing taxpayer be living at the time notice is due. We see no difference between the taxpayer who moves from the county without leaving a forwarding address, after the tax judgment has been docketed but before issuance of execution, and the taxpayer who dies during the same period. In either case "reg-

istered or certified mail notice . . . to the listing taxpayer, at his last known address," would suffice to meet the notice requirements of G.S. 105-392(c).

[4] Defendants argue that the lack of notice to the heirs of Frank Osteen, the owners of the property at the time execution issued, prior to the execution sale of the property constitutes a violation of due process embodied by the N. C. Const. art. 1, § 19. We disagree. The notice requirement of G.S. 105-392(c) is not constitutionally compelled. Due process of law imports notice and an opportunity to be heard or defend in a regular proceeding before a competent tribunal. *Eason v. Spence*, 232 N.C. 579, 61 S.E. 2d 717 (1950). In this situation due process was satisfied when the listing taxpayer was notified, at least two weeks prior to docketing the judgment, "that the judgment will be docketed and that execution will issue thereon in the manner provided by law." G.S. 105-392(a). There is no allegation or evidence in the record that the notice requirement of G.S. 105-392(a) was not fulfilled. The listing taxpayer, Frank Osteen, was notified of the action taken against his property for failure to pay taxes and had sufficient opportunity to resist the judgment or execution thereof. In view of the notice provided by G.S. 105-392(a), the notice requirement of G.S. 105-392(c) is not compelled by due process. Furthermore, due process having been satisfied by notice to the listing taxpayer as provided by G.S. 105-392(a), the County is not required to shoulder the intolerable burden of directly notifying the heirs of a listing taxpayer who died prior to issuance of execution.

The execution sale authorized by G.S. 105-392(c) is analogous to an execution sale conducted under the authority of G.S. 1-339.41. After all, G.S. 105-392(c) states that "execution shall be issued . . . in the same manner as executions are issued upon other judgments of the superior court, and said property shall be sold by the sheriff in the same manner as other property is sold under execution: . . . " The conduct of ordinary execution sales requires that personal notice be served upon the property owner before the sale or that registered or certified mail notice be sent to the property owner if personal notice cannot be served within the county. *See* G.S. 1-339.54. This notice requirement for execution sales is directory only, and failure to comply with the notice requirement prior to an execution sale does not render the sale invalid or void with respect to an innocent purchaser who lacks knowledge of the

irregularity. *Walston v. Applewhite & Co.,* 237 N.C. 419, 75 S.E. 2d 138 (1953).

[4]  Likewise, the notice requirement of G.S. 105-392(c) is directory. However, the notice requirement of G.S. 105-392(c) is not a hollow gesture. Failure to furnish this notice may expose the sale to attack, provided such action is brought within the pertinent statute of limitations. For example, it is well established in this jurisdiction that " . . . gross inadequacy of consideration [for property purchased at the execution sale], when coupled with any other inequitable element, even though neither, standing alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties." *Weir v. Weir,* 196 N.C. 268, 145 S.E. 281 (1928). Failure to comply with the notice requirement of G.S. 105-392(c) or the current G.S. 105-375(i) could constitute such an inequitable element and open the door to a successful attack of the tax sale.

Even if the facts of this case were sufficient to invoke the principle espoused by *Weir,* it would be to no avail. Defendants' action to set aside the execution sale was instituted on 7 October 1974, more than four years after the execution sale. This action is clearly precluded by the one-year statute of limitations imposed by former G.S. 105-393. It is argued that the County's failure to provide notice according to G.S. 105-392(c) is a "jurisdictional defect" rendering the execution sale void. The mere absence of the registered mail notice to the taxpayer's last known address prior to execution, while irregular and potentially unfair to the taxpayer, does not impair the authority of the court to issue execution upon a valid tax judgment and direct the sale of the property to satisfy the judgment. *See* 5 A.L.R. 2d 1021.

In conclusion, due to the absence of any jurisdictional defect in the manner judgment was rendered against the property of Frank Osteen, execution was issued and the property was sold, defendants are bound by the one-year statute of limitations imposed by G.S. 105-393. Therefore, the defendants' motion in the trial court was barred as a matter of law and should have been dismissed.

The judgments entered 12 March 1975 and 9 April 1975 are reversed, and this cause is remanded for entry of judgment dismissing defendants' motion in the cause with prejudice.

Reversed and remanded.

Judges HEDRICK and CLARK concur.