OAKWOOD ACCEPTANCE CORPORATION, LLC, Plaintiff v. DALTON RAY MASSENGILL; PHYLLIS TART MASSENGILL; DAVID WOMACK, Tax Collector for Johnston County, North Carolina; JOHNSTON COUNTY, NORTH CAROLINA, RAINBOW INVESTMENTS, L.L.C.; NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Defendants

No. COA02-706
No. COA02-1430

(Filed 20 January 2004)

**1. Taxes— sale of mobile home—insufficient notice of sale— grossly inadequate sale price**

The trial court did not err by setting aside the tax sale of a mobile home where the reference in the notice of sale to "Storage Location" without any accompanying address was not a sufficient designation of the place of sale under N.C.G.S. § 1-339.51, and the ultimate sale price was grossly inadequate.

**2. Appeal and Error— standing—aggrieved party—necessity of appeal**

Appeals from the dismissal of DMV from claims arising from the tax sale of a mobile home were themselves dismissed. Defendant Rainbow was not aggrieved by the decision, and plaintiff Oakwood did not appeal from that portion of the order. N.C.G.S. § 1-271.

**3. Public Officers and Employees— suit against tax collector—individual capacity—notice insufficient**

A complaint did not state a claim against the Johnston County Tax Collector (Womack) in his individual capacity where it did not provide sufficient notice that he was being sued individually.

**4. Appeal and Error— issue moot—relief granted elsewhere**

A portion of an appeal was moot where it sought relief granted elsewhere in the appeal.

**5. Immunity— sovereign—no allegations of insurance or waiver**

A negligence claim against a county arising from a tax sale was properly dismissed as barred by sovereign immunity where there were no allegations that the county purchased liability insurance or otherwise waived immunity.

### 6. Civil Rights— tax sale—no allegation of county policy or custom

A claim against a county under 42 U.S.C. § 1983 was properly dismissed where there was a claim only under respondeat superior and no allegation of an injury due to Johnston County's policy, custom, or usage or that it resulted from a decision by a person with final decision-making authority.

Appeals by plaintiff from order entered 14 March 2002 by Judge Knox V. Jenkins, in Johnston County Superior Court and by defendant Rainbow Investments, L.L.C., from order entered 22 May 2002 by Judge James R. Vosburgh, in Johnston County Superior Court. Heard in the Court of Appeals 15 September 2003.

*Frederic E. Toms & Associates, P.L.L.C., by David A. Bridgman, for plaintiff.*

*Holland & O'Connor, P.L.L.C., by W. A. Holland, Jr., for defendant Rainbow Investments, L.L.C.*

*Attorney General Roy Cooper, by Assistant Attorney General Jeffrey R. Edwards, for defendants North Carolina Department of Transportation and North Carolina Division of Motor Vehicles.*

*J. Mark Payne, for defendants Johnston County and David Womack.*

GEER, Judge.

This decision addresses two appeals arising from the same lawsuit challenging the tax sale of a mobile home in which plaintiff Oakwood Acceptance Corporation, LLC held a perfected security interest. Defendant Rainbow Investments, L.L.C., the purchaser of the mobile home at the tax sale, appeals from (1) the trial court's grant of partial summary judgment to Oakwood invalidating the sale and awarding Oakwood possession of the mobile home; and (2) the trial court's dismissal of Oakwood's claims against the North Carolina Department of Transportation and the Division of Motor Vehicles (collectively "the DMV"). Plaintiff Oakwood appeals from the trial court's dismissal of its claims against Johnston County and David Womack. Case No. COA02-706, plaintiff Oakwood's appeal, and Case No. COA02-1430, defendant Rainbow's appeal, were previously consolidated for hearing. They are now consolidated for decision.

OAKWOOD ACCEPTANCE CORP. v. MASSENGILL

[162 N.C. App. 199 (2004)]

We hold that the trial court properly found no genuine issues of material fact regarding the invalidity of the sale and, therefore, affirm the grant of partial summary judgment to Oakwood. As for the dismissal of the DMV, Rainbow does not have standing to appeal since it was not an aggrieved party with respect to that portion of the trial court's order. We also hold that the trial court properly dismissed the claims against Johnston County and Womack because Oakwood failed to allege a waiver of state law governmental immunity and failed to allege a basis for municipal liability under 42 U.S.C. § 1983.

## Facts

On 12 November 1998, defendants Dalton Ray Massengill and Phyllis Tart Massengill purchased an Oakwood double-wide mobile home priced at $71,789.00. The Massengills financed the purchase with Oakwood for the principal sum of $76,766.22 plus interest and other charges. Oakwood perfected its security interest in the mobile home by filing with the DMV. When the Massengills defaulted on their payments, Oakwood accelerated their debt and repossessed the mobile home in September 2000 by changing the locks and posting notices.

Later in September, the Johnston County Tax Collector's Office levied upon and seized the Massengills' mobile home for non-payment of taxes due on the mobile home. Following the levy, the Johnston County Tax Collector's Office forwarded notice of the intended tax sale to the DMV, which in a letter dated 27 September 2000 acknowledged receipt of the notice and stated: "A reasonable attempt has been made to locate and notify the current owner and all recorded lienholders for all sales conducted under G.S. 44-A. Full disclosure of all liens is not guaranteed."

On 27 September 2000, the Johnston County Tax Collector's Office posted a notice of sale at the Johnston County Courthouse announcing that the sale of the Massengills' mobile home would take place on 18 October 2000 "at 11:00 at Storage Location." The notice provided no further information about the location of the sale.

Although Johnston County had valued and insured the mobile home at $50,000.00, Rainbow purchased it at the sale for only $5,000.00. Following payment to the County of the taxes and costs, less than $500.00 remained to satisfy the Massengills' debt to Oakwood.

In October 2001, Oakwood filed a complaint in Johnston County Superior Court asserting claims for (1) breach of contract against the Massengills; (2) declaratory judgment voiding the sale of the mobile home; (3) damages for negligence and under 42 U.S.C. § 1983 against "Tax Collector and Johnston County"; (4) possession against Rainbow; (5) unjust enrichment against Rainbow; (6) injunctive relief barring transfer by Rainbow of any interest in the mobile home; and (7) declaratory judgment that the "Tax Collector" and the DMV were required to provide actual notice to plaintiff that the mobile home had been seized for taxes owed. Defendants Johnston County and Womack filed a motion to dismiss under Rule 12(b)(6) and on 14 March 2002, Judge Knox V. Jenkins granted that motion. The order of dismissal specified that it was "final" as to the County and Womack and that "there is no just cause for delay of any appeal." On 4 April 2002, Oakwood appealed that order.

The remaining parties filed cross-motions for summary judgment with the DMV alternatively filing a motion to dismiss pursuant to Rules 12(b)(6), 12(c), and 12(h)(2). On 22 May 2002, Judge James R. Vosburgh granted Oakwood partial summary judgment as to defendant Rainbow, awarded plaintiff immediate possession of the mobile home, ordered the DMV to void the certificate of title issued to Rainbow and to reissue the title as it existed before the sale, dismissed all claims against the DMV, and awarded plaintiff $78,912.67 (less the net proceeds of any sale of the mobile home) as against the Massengills. The order stated: "This is a final and appealable order, and there is no just cause for delay." Rainbow appealed, contesting both the dismissal of the DMV and the partial summary judgment granted to Oakwood. Although Oakwood did not cross-appeal, it cross-assigned error as to the dismissal of the DMV.

<u>Rainbow's Appeal</u>

We address first Rainbow's appeal because it involves the primary question presented by this case: Whether the tax sale of the Massengills' mobile home was valid. As an initial matter, we note that Rainbow's appeal is interlocutory since the trial court only granted partial summary judgment to Oakwood. Because, however, the trial court appropriately certified the order under Rule 54 of the Rules of Civil Procedure, the appeal is properly before this Court. *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993).

## I. The Grant of Partial Summary Judgment to Oakwood

[1] Rainbow contends that genuine issues of material fact exist precluding the grant of partial summary judgment to Oakwood. Specifically, Rainbow argues that there are issues of fact regarding whether an irregularity occurred in connection with the tax sale and whether Rainbow was a good faith purchaser for value.

On review of a grant of summary judgment, this Court must review the whole record to determine (1) whether the pleadings, the discovery on file, and any affidavits show that there is no genuine issue as to any material fact; and (2) whether the moving party is entitled to judgment as a matter of law. *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). As stated by this Court:

> A genuine issue of material fact is of such a nature as to affect the outcome of the action. The moving party bears the burden of establishing the lack of a triable issue of fact. The motion must be denied where the non-moving party shows an actual dispute as to one or more material issues.

*Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 681, 535 S.E.2d 357, 361, *app. dismissed and disc. review denied*, 353 N.C. 265, 546 S.E.2d 102 (2000) (citations omitted). The non-movant may not "rest upon the allegations of its pleading to create an issue of fact, even though the evidence must be interpreted in a light favorable to the nonmovant." *Smiley's Plumbing Co., Inc. v. PFP One, Inc.*, 155 N.C. App. 754, 761, 575 S.E.2d 66, 70, *disc. review denied*, 357 N.C. 166, 580 S.E.2d 698 (2003).

Johnston County and its Tax Collector acted pursuant to N.C. Gen. Stat. §§ 105-366 and 105-367 (2003) in levying upon and seizing the Massengills' mobile home. N.C. Gen. Stat. § 105-366 permits a taxing authority collecting unpaid taxes to proceed first against personal property, while § 105-367(a) provides: "The levy upon the sale of tangible personal property for tax collection purposes (including levy and sale fees) shall be governed by the laws regulating levy and sale under execution except as otherwise provided in this section."

In execution sales, a sale of personal property may take place "at any place in [the] county designated . . . in the notice of sale." N.C. Gen. Stat. § 1-339.44(c) (2003). Further, under N.C. Gen. Stat. § 1-339.51 (2003), "[t]he notice of sale shall . . . (2) [d]esignate

the date, hour and place of sale . . . ." By virtue of N.C. Gen. Stat. § 105-367(a), these requirements apply equally to the sale of personal property for non-payment of taxes.

Oakwood first challenges the validity of the sale on the grounds that the failure to provide it with actual notice violated the due process requirements of the federal and state constitutions, citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798, 77 L. Ed. 2d 180, 187, 103 S. Ct. 2706, 2711 (1983) (citations omitted) ("Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane* [*v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950) (setting forth due process requirements)]."). Alternatively, Oakwood contends that the failure of the posted notice of sale to specify the actual location of the sale invalidated the sale. Because we hold that this omission when combined with the undisputed evidence of inadequacy of price justified the trial court's decision, we do not address Oakwood's constitutional argument.

Our Supreme Court has held with respect to foreclosure and execution sales:

> Nor is inadequacy of price alone sufficient to avoid the sale. But gross inadequacy of consideration, when coupled with any other inequitable element, even though neither, standing alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties.

*Weir v. Weir*, 196 N.C. 268, 270, 145 S.E. 281, 282 (1928) (citations omitted). The Court clarified this principle in *Swindell v. Overton*, 310 N.C. 707, 713, 314 S.E.2d 512, 516 (1984) (citations omitted):

> [I]t is the materiality of the irregularity in such a sale, not mere inadequacy of the purchase price, which is determinative of a decision in equity to set the sale aside. Where an irregularity is first alleged, gross inadequacy of purchase price may then be considered on the question of the materiality of the irregularity. Where inadequacy of purchase price is necessary to establish the

materiality of the irregularity, it must also appear that the irregularity or unusual circumstance caused the inadequacy of price.

These principles apply to tax sales. *Henderson County v. Osteen*, 28 N.C. App. 542, 552, 221 S.E.2d 903, 909 (1976) (failure to comply with notice requirements in tax foreclosure sales "open[s] the door to a successful attack of the tax sale" under *Weir*), *rev'd on other grounds*, 292 N.C. 692, 235 S.E.2d 166 (1977). *See also Henderson County v. Osteen*, 297 N.C. 113, 119, 254 S.E.2d 160, 164 (1979) ("A tax foreclosure under the statute applicable to this case is analogous to an execution sale.").

Rainbow argues that there was a disputed issue of fact as to the existence of any irregularity. Rainbow contends that the jury should have been allowed to decide whether the notice of sale's reference to "Storage Location" was a sufficient designation of the place of the sale under N.C. Gen. Stat. § 1-339.51. We hold that this issue, involving only a question of statutory construction, was a question of law for the trial court. *Ace-Hi, Inc. v. Dep't of Transp.*, 70 N.C. App. 214, 216, 319 S.E.2d 294, 296 (1984) (when case involves only "legal questions of . . . interpretation of statutes and regulations," it is ripe for summary disposition).

The General Assembly must have intended that a notice of sale contain greater specification of location than simply a reference to an unnamed "Storage Location" without any accompanying address. The purpose of requiring that sales occur " 'at prescribed times and places [is] so that all persons may know when and where to attend to purchase such property to be sold.' " *Bladen County v. Breece*, 214 N.C. 544, 547, 200 S.E. 13, 15 (1938) (quoting *Wortham v. Basket*, 99 N.C. 70, 71, 5 S.E. 401, 401 (1888)). Under an analogous statute, our Supreme Court has held "[t]he sole purpose in requiring that notice of the time and place of such sale be given the mortgagee is to afford him an opportunity to protect his rights in the [personal] property." *Habit v. Stephenson*, 217 N.C. 447, 449, 8 S.E.2d 245, 246 (1940). With respect to personal property, specification of an address in the notice of sale is particularly important since the sale may occur at any location in the county. N.C. Gen. Stat. § 1-339.44(c). If a notice of sale does not include a location identifiable on its face, then readers of the notice will have no idea where to go to attend the sale.

We hold that the phrase "Storage Location" without more does not meet the requirement of N.C. Gen. Stat. § 1-339.51 that the notice of sale designate the "place of sale." Such a notice fails to fulfill its

essential purpose of actually notifying potential purchasers where the sale is going to take place. The trial court did not, therefore, err in concluding that the notice of sale failed to comply with N.C. Gen. Stat. § 1-339.51.

The trial court also properly concluded that this irregularity was material under the facts of this case. As the Supreme Court has stated, our statutes regulating sales "contemplate a sale at which the thing sold will bring its fair value." *Pittsburgh Plate Glass Co. v. Forbes*, 258 N.C. 426, 429, 128 S.E.2d 875, 877 (1963). A public sale requires "that an opportunity be given for competitive bidding." 72 Am. Jur. 2d *State and Local Taxation* § 843 (2001). *See also Henderson County v. Osteen*, 292 N.C. 692, 235 S.E.2d 166 (1977) (stating that purpose of notice is to enable taxpayer to attend sale and make sure property is not sold for grossly inadequate price). A failure to publicize where a sale will occur will have the likely effect of decreasing the number of potential bidders, the amount of competition, and thus the price. Potential effect and not actual effect is all that is required if the ultimate sales price is grossly inadequate: "Actuality of injury is not a prerequisite of relief. The potentialities of the error, considered in connection with the grossly inadequate price, compel the conclusion that the irregularity in the sale was material and prejudicial—sufficient in nature to justify the interposition of a court of equity." *Foust v. Gate City Sav. & Loan Ass'n*, 233 N.C. 35, 38, 62 S.E.2d 521, 523 (1950).

Since the undisputed evidence establishes the existence of an irregularity with the potential for decreasing the sales price, the next question becomes the adequacy of the price. The trial court found that the evidence was undisputed that the mobile home had a fair market value of $50,000.00 and that it sold for only $5,000.00 (or 10% of its value). The court concluded that this price was "grossly inadequate." Rainbow does not dispute in its brief either the finding regarding the market value or the court's conclusion regarding the adequacy of the price.

Instead, Rainbow argues that a question of fact exists as to whether it was a good faith purchaser for value. The claim that a party was a good faith purchaser for value is an affirmative defense. *Foust*, 233 N.C. at 38, 62 S.E.2d at 524. Rule 8(c) of the North Carolina Rules of Civil Procedure requires that a party specifically set forth in its answer any affirmative defenses. N.C. Gen. Stat. § 1A-1, Rule 8(c) (2003). " 'Failure to raise an affirmative defense in the pleadings gen-

erally results in a waiver thereof.'" *Purchase Nursery, 'Inc. v. Edgerton*, 153 N.C. App. 156, 162, 568 S.E.2d 904, 908 (2002) (quoting *Robinson v. Powell*, 348 N.C. 562, 566, 500 S.E.2d 714, 717 (1998)). Rainbow failed to allege in its answer that it was a good faith purchaser for value. It has, therefore, waived that defense. *Id.* (refusing, in connection with summary judgment order, to allow defendant to argue affirmative defense not asserted in answer). *See also Swindell*, 310 N.C. at 715, 314 S.E.2d at 517 (defense of bona fide purchaser for value unavailable in connection with foreclosure sale when irregularity was apparent on the face of the advertisement of the sale).

Given the potential that the insufficient notice of sale had to depress the mobile home's sales price when combined with the gross inadequacy of the ultimate sales price, we hold that the trial court did not err in setting aside the sale.

## II. The DMV's Dismissal

[2] Rainbow also attempts to appeal the trial court's dismissal of the DMV. Under N.C. Gen. Stat. § 1-271 (2003), "[a]ny party aggrieved may appeal . . . ." If, however, the order appealed "'does not adversely affect the substantial rights of appellant, the appeal will be dismissed.'" *Childers v. Seay*, 270 N.C. 721, 725, 155 S.E.2d 259, 262 (1967) (quoting *Coburn v. Timber Corp.*, 260 N.C. 173, 175, 132 S.E.2d 340, 341 (1963)). *See also Culton v. Culton*, 327 N.C. 624, 626, 398 S.E.2d 323, 324 (1990) (where the appellant's rights have not been directly affected by the court's order, appellant is not a party aggrieved and has no standing to challenge the order on appeal and the appeal should be dismissed).

Since Rainbow asserted no claims against the DMV, Rainbow cannot be affected except in the most indirect fashion by the order dismissing Oakwood's claims against the DMV. *See Childers*, 270 N.C. at 726, 155 S.E.2d at 262 (when neither defendant had asserted a cross-claim, one defendant could not appeal ruling as to second defendant because "each was an adverse party to the plaintiff, only"); *Canestrino v. Powell*, 231 N.C. 190, 196, 56 S.E.2d 566, 571 (1949) (defendant was not an aggrieved party as to dismissal of complaint with respect to co-defendant). Here, the only party aggrieved by the dismissal of the DMV was Oakwood, but Oakwood did not appeal from that dismissal.

Oakwood has nonetheless attempted to cross-assign as error that dismissal. Cross-assignments of error are strictly limited to issues

that "deprived the appellee of an alternative basis in law for support-ing the judgment, order, or other determination from which appeal has been taken." N.C.R. App. P. 10(d). Since Oakwood's arguments regarding the trial court's dismissal of the DMV do not serve as an alternative basis for supporting the trial court's grant of summary judgment, they should have been the subject of a cross-appeal. *Lewis v. Edwards*, 147 N.C. App. 39, 51-52, 554 S.E.2d 17, 24-25 (2001) (when plaintiff cross-assigned error as to trial court's failure to award dam-ages, "[p]laintiff's failure to appeal the trial court's order waives this Court's consideration of the matter on appeal"); *Wilson Realty & Constr., Inc. v. Asheboro-Randolph Bd. of Realtors, Inc.*, 134 N.C. App. 468, 473, 518 S.E.2d 28, 32 (1999) (rejecting party's cross-assign-ment of error regarding dismissal of claim because it did not serve as an alternative basis for supporting trial court's order granting sum-mary judgment). By failing to appeal from the trial court's order dis-missing the DMV, Oakwood has waived review of that portion of the order. Since Rainbow, the only party to appeal, was not aggrieved by the decision, we dismiss Rainbow's appeal from the portion of the order granting the DMV's motion to dismiss.

## Oakwood's Appeal

Oakwood appealed from the trial court's order dismissing its claims against defendants Johnston County and David Womack. This appeal, also interlocutory, is before the Court based on the trial judge's Rule 54 certification.

A trial court considering a motion to dismiss for failure to state a claim must decide, taking all the plaintiff's allegations as true, whether the plaintiff is entitled to recover under some legal theory. *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000). A complaint may be dismissed pursuant to Rule 12(b)(6) when "(1) the complaint on its face reveals that no law supports a plaintiff's claim, (2) the complaint on its face reveals the absence of facts suffi-cient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats a plaintiff's claim." *Governor's Club, Inc. v. Governor's Club Ltd. P'ship*, 152 N.C. App. 240, 253, 567 S.E.2d 781, 790 (2002), *aff'd per curiam*, 357 N.C. 46, 577 S.E.2d 620 (2003).

Oakwood asserted claims against both Johnston County and Womack for a declaratory judgment voiding the tax sale, for damages based on negligence, and for damages under 42 U.S.C. § 1983. We hold that the dismissal of Johnston County and Womack was proper.

OAKWOOD ACCEPTANCE CORP. v. MASSENGILL

[162 N.C. App. 199 (2004)]

## I. Womack

[3] Before we can address whether Womack's dismissal was proper, we must first determine whether Oakwood sued him in his individual capacity, in his official capacity, or in both capacities. *Meyer v. Walls*, 347 N.C. 97, 110, 489 S.E.2d 880, 887 (1997). In a suit against a governmental employee in his official capacity, the plaintiff is seeking relief from the governmental entity that employs the defendant, while in a suit against that employee in his individual capacity, the plaintiff is seeking relief from the defendant as an individual. *Id.* The distinction is critical with respect to the availability and scope of immunity and the ability even to assert a cause of action.

As our Supreme Court pointed out almost six years ago:

It is a simple matter for attorneys to clarify the capacity in which a defendant is being sued. Pleadings should indicate in the caption the capacity in which a plaintiff intends to hold a defendant liable. For example, including the words "in his official capacity" or "in his individual capacity" after a defendant's name obviously clarifies the defendant's status. In addition, the allegations as to the extent of liability claimed should provide further evidence of capacity. Finally, in the prayer for relief, plaintiffs should indicate whether they seek to recover damages from the defendant individually or as an agent of the governmental entity.

*Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 724-25 (1998). A problem occurs when, as here, the plaintiff does not follow the direction of the Supreme Court and fails to expressly indicate in which capacity the defendant has been sued.

To decipher the defendant's capacity,

"[t]he crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities."

*Meyer*, 347 N.C. at 110, 489 S.E.2d at 887 (quoting Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State Law for Public Officials and Employees: An Update*, Loc. Gov't L. Bull. 67, at 7 (Inst. of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995).

Here, Oakwood is seeking to recover monetary damages for negligence and under 42 U.S.C. § 1983 for violation of its due process rights. The fact that damages are sought does not end the inquiry: "[I]f money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the governmental entity or from the pocket of the individual." *Mullis*, 347 N.C. at 553, 495 S.E.2d at 723-24. To do so, a court must review the allegations in the complaint and the course of the proceedings. *Id.*, 495 S.E.2d at 724.

As indicated above, the caption of the complaint does not directly specify whether Womack is sued individually or officially. It does, however, identify defendant as "David Womack, Tax Collector for Johnston County, North Carolina," suggesting an official capacity suit. The complaint does not set forth a claim for relief against Womack separately, but rather states claims collectively against Womack and Johnston County. As the Supreme Court noted in *Mullis*, such an approach is "indicative of plaintiff['s] intention to sue defendant . . . in his official capacity . . . ." *Id.*

Most importantly, when asserting the claims for relief, Oakwood does not identify defendant Womack by his name, but rather by the title of his office, "Tax Collector." For example, in Oakwood's third claim for relief for damages, Oakwood alleges:

> 42. Defendant Tax Collector had a duty to the Plaintiff and to the Massengills as the owners of the property to use diligence to obtain a fair and reasonable price for the mobile home before selling it.

> 43. Defendant Tax Collector failed to exercise diligence to obtain a fair and reasonable price for the mobile home and sold it for ten percent or less of its fair market value.

> 44. Upon information and belief, Defendant Tax Collector knew that the offer made by Rainbow for $5,000 was grossly inadequate and was grossly less than the fair market value of the mobile home.

45. As a result, Plaintiff has been damaged by the amount of the fair market value of the mobile home at the time of its seizure by the Tax Collector. In the event the home is ultimately recovered by the Plaintiff, the Plaintiff has been damaged in the amount the home has depreciated during the time it has been detained by Defendant Rainbow. Pursuant to 42 U.S.C. 1983, Plaintiff is entitled to be restored to the position it would have been in absent Defendants' wrongful and negligent conduct.

While the complaint does seek damages "jointly and severally" in the prayer for relief, a fact that ordinarily suggests an individual capacity suit, *Block*, 141 N.C. App. at 279, 540 S.E.2d at 420, Oakwood again focuses on Womack's title, seeking the relief "[a]gainst Johnston County and its Tax Collector, David Womack, jointly and severally . . . ." By referring to Womack by his title, Oakwood expresses an intent to sue the office and not Womack individually.

In *Mullis*, the Supreme Court also reviewed the course of the proceedings, noting that even after the defendants asserted a defense of governmental immunity, the plaintiffs did not attempt to amend their complaint to specify the capacity in which they were suing the individual defendant. 347 N.C. at 554, 495 S.E.2d at 724. The same is true here.

Based on our review of the pleadings and the course of the proceedings, we hold that the complaint is not sufficient to state a claim for relief against defendant Womack in his individual capacity. While the reference to joint and several liability provides some support for an individual capacity suit, it is not sufficient, in light of the other allegations and the course of the proceedings, to provide adequate notice to defendant Womack that he was being sued individually as opposed to officially. *Id.* ("Thus, in order for defendant . . . to have an opportunity to prepare a proper defense, the pleading should have clearly stated the capacity in which he was being sued.").

An official capacity suit, such as the one here, is "merely another way of pleading an action against the governmental entity." *Id.*, 495 S.E.2d at 725. *See also Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) (official capacity claim under 42 U.S.C. § 1983 is only another way of pleading a claim against the governmental entity of which officer is an agent and "[t]hus, where the governmental entity may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant"). As a result, Oakwood's claims against Womack in his official

capacity as Johnston County's Tax Collector are identical to its claims against Johnston County and our analysis of the viability of the Johnston County claims applies equally to Womack.

## II. Claims Against Johnston County

### A. *Declaratory Judgment Claim*

[4] Oakwood sought a judgment, apparently against all defendants, "nullifying the sale of the mobile home by the Tax Collector and Johnston County for the reason that such sale was illegal, was not carried out in accordance with statutory requirements, and was accordingly void." Oakwood also sought a declaratory judgment that "the Defendant Tax Collector was required under the North Carolina Constitution to provide actual notice to the Plaintiff that the mobile home in which it had a secured interest and a property interest had been seized for taxes purportedly owed."

Because, in connection with Rainbow's appeal, we have affirmed the trial court's order declaring the sale void, this portion of Oakwood's appeal is moot and we need not address it. "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison County Realtors Ass'n*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996). Further,

> [w]henever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

*Dickerson Carolina, Inc. v. Harrelson*, 114 N.C. App. 693, 697, 443 S.E.2d 127, 131, *disc. review denied*, 337 N.C. 691, 448 S.E.2d 520 (1994) (internal quotation marks omitted).

No party has argued on appeal that the trial court's grant of partial summary judgment to Oakwood is in any way ineffective in the absence of a claim against Johnston County and Womack. We therefore decline to address Oakwood's arguments regarding its entitlement to a declaratory judgment with respect to Johnston County and Womack.

### B. *Negligence Claim*

[5] Oakwood's claim for damages based on negligence is barred by governmental immunity. Under North Carolina law, counties are en-

titled to governmental (or sovereign) immunity unless the county waives immunity or otherwise consents to be sued. *Dawes v. Nash County*, 357 N.C. 442, 445, 584 S.E.2d 760, 762 (2003). "Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Meyer*, 347 N.C. at 104, 489 S.E.2d at 884.

While a county may waive immunity through the purchase of liability insurance, N.C. Gen. Stat. § 153A-435 (2003), "[i]n order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity." *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002), *disc. review denied*, 357 N.C. 165, 580 S.E.2d 695 (2003). "Absent such an allegation, the complaint fails to state a cause of action." *Id.* Since the complaint in this case does not include any allegations that the County has purchased liability insurance or otherwise waived its immunity, the trial court properly dismissed the negligence claim against the County.

C. *42 U.S.C. § 1983 Claim*

**[6]** The complaint also asserts a claim for damages under 42 U.S.C. § 1983 for violation of Oakwood's due process rights. While Oakwood relied upon the North Carolina constitution as a basis for voiding the sale, Oakwood did not seek damages under the state constitution and we do not, therefore, address whether Oakwood would have been entitled to pursue such a claim.

Oakwood correctly states that a county may be sued for damages under 42 U.S.C. § 1983 for violation of the federal constitution. Oakwood's complaint, however, fails to include the allegations necessary to state a § 1983 claim against a municipality such as a county.

The United States Supreme Court first held that a municipality is subject to suit under § 1983 in *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). *Monell* and the decisions that followed "[made] it quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant County*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 523, 113 S. Ct. 1160, 1162 (1993).

Thus, contrary to Johnston County's contentions, it is not entitled to immunity from suit under § 1983. The County's reliance on *Faulkenbury v. Teachers' & State Employees' Retirement System*,

108 N.C. App. 357, 424 S.E.2d 420, *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993) and *Corum v. Univ. of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431, 113 S. Ct. 493 (1992) is misplaced. Those cases recognized that states—as opposed to local governing bodies—may not be sued under § 1983 and are entitled to Eleventh Amendment immunity. Indeed, this distinction was noted by our Supreme Court in *Moore*, 345 N.C. at 365, 481 S.E.2d at 20: "In the present case, the Court of Appeals erroneously applied the holding of *Corum* to dismiss plaintiffs' claims against a municipality and its officials. Although a municipal government is a creation of the State, it does not have the immunity granted to the State and its agencies."

Nevertheless, *Monell* also held that a municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. at 691, 56 L. Ed. 2d at 636, 98 S. Ct. at 2036 (emphasis original). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 56 L. Ed. 2d at 638, 98 S. Ct. at 2037-38.

In order to state a claim for relief against a local governing body, a plaintiff must allege a basis for liability under *Monell*: "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (reversing dismissal of complaint that alleged the existence of several municipal policies or customs). *See also McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (in order to survive a motion to dismiss, § 1983 plaintiff must allege that the municipality had an express policy or custom or usage or that the constitutional injury was caused by a person with final policymaking authority).

The complaint in this case does not allege a basis for liability under *Monell*. The complaint contains no allegation that Oakwood's injury was due to Johnston County policy, custom, or usage or that it resulted from a decision by a person with final policymaking authority for the County. A review of the allegations reveals only a claim based on *respondeat superior*. The trial court therefore properly dismissed Oakwood's claims under § 1983.

## Conclusion

We affirm the trial court's orders granting partial summary judgment to Oakwood and dismissing the claims asserted against Johnston County and Womack. We dismiss Rainbow's appeal with respect to the DMV.

Affirmed in part and dismissed in part.

Chief Judge EAGLES and Judge MARTIN concur.