**Rebekah EFIRD, Plaintiff,**

v.

**D. Brad RILEY, Sheriff of Cabarrus County and Cabarrus County Sheriff's Department, Defendants.**

**No. 1:04CV397.**

United States District Court,
M.D. North Carolina.

Nov. 1, 2004.

Tamara W. Brooks, Widis & Brooks, PLLC, Charlotte, NC, for Plaintiff.

John Brem Smith, McNair Law Firm, Charlotte, NC, for Defendants.

## ORDER

DIXON, United States Magistrate Judge.

Plaintiff Rebekah Efird, a former deputy sheriff of Cabarrus County, has sued Defendants, alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); and state law claims for negligent supervision/retention, intentional infliction of emotional distress, and wrongful discharge in violation of public policy. Defendants have filed a motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [docket no. 7], and Defendants' motion has been referred to the undersigned. The parties have filed responsive pleadings and this matter is ripe for disposition. The parties have consented to the jurisdiction of the magistrate judge.

*FACTS*

Plaintiff Rebekah Efird worked as a deputy sheriff in the Cabarrus County Sheriff's Department from June 11, 2001, until she was fired on March 7, 2003. Plaintiff alleges that she was sexually harassed by her male co-workers while working at the sheriff's department and that

the department fired her in retaliation for complaining about the harassment. On July 17, 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation. On March 31, 2004, the EEOC issued a right-to-sue letter to Plaintiff. On May 7, 2004, Plaintiff filed her original complaint, in which she named "Cabarrus County" and the "Cabarrus County Sheriff's Department" as Defendants. On June 15, 2004, Plaintiff filed an amended complaint, dropping Cabarrus County as a Defendant and adding "D. Brad Riley, Sheriff of Cabarrus County," as a Defendant. On June 21, 2004, Defendants Riley and the Cabarrus County Sheriff's Department filed a motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In their motion to dismiss, Defendants contend that (1) the Cabarrus County Sheriff's Department is not a legal entity and therefore cannot be sued; (2) Plaintiff has sued Sheriff Riley in his individual capacity only and dismissal is proper as to him; (3) the amended complaint is subject to dismissal because Plaintiff has not named Sheriff Riley's surety as a Defendant; (4) Sheriff Riley is barred from suit under sovereign immunity; and (5) each of Plaintiff's causes of action fails to state a claim for which relief may be granted.

### DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F.Supp. 811, 813 (M.D.N.C.1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plain-

tiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Dismissal under 12(b)(6) is generally regarded as appropriate only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McNair*, 95 F.3d at 328 (noting that the proper question is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief); *Food Lion*, 887 F.Supp. at 813. Stated differently, the issue is not whether the plaintiff will ultimately prevail on his claim, but whether he is entitled to offer evidence to support the claim. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir.1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir.1978). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts which set forth a claim. *Defendants' Motion to Dismiss the Cabarrus County Sheriff's Department as a Defendant*

■ Defendants first contend that the court should dismiss the Cabarrus County Sheriff's Department as a Defendant because it is not a legal entity and cannot be sued. I agree. State law dictates whether a governmental agency has the capacity to

be sued in federal court. *Avery v. Burke,* 660 F.2d 111, 113–14 (4th Cir.1981). There is no North Carolina statute authorizing suit against a county's sheriff's department. Indeed, by statute a sheriff has "the exclusive right to hire, discharge, and supervise the employees in his office." *See* N.C. GEN. STAT. § 153A–103. Thus, the sheriff, rather than the department or associated county, may be held liable for employment law violations within the department. The court will therefore grant Defendants' motion to dismiss the Cabarrus County Sheriff's Department as a Defendant. *See Nichols v. Forsyth County Sheriff's Dep't,* No. 1:99CV105, 2000 U.S. Dist. LEXIS 6456, at *2 (M.D.N.C. Feb. 1, 2000) (dismissing the Forsyth County Sheriff's Department because it is not an entity capable of being sued).

*Defendants' Motion to Dismiss Sheriff Riley on the Ground that He Has Not Been Sued in His Official Capacity*

Defendants next contend that the claims against Sheriff Riley must be dismissed because Plaintiff has failed to sue Sheriff Riley in his official capacity as Sheriff of Cabarrus County. Defendants contend that the complaint is, instead, against Sheriff Riley in his individual capacity only. Defendants do not clearly articulate in their brief why, even assuming that Sheriff Riley is being sued in his individual capacity only, Plaintiff fails to state claims against Sheriff Riley as to each cause of action. It appears, at the least, that Defendants are arguing that (1) Title VII only allows suit against an employer, not against individual employees of the employer; (2) the Sheriff of Cabarrus County was Plaintiff's "employer" within the meaning of Title VII; (3) Plaintiff has failed to sue the Sheriff of Cabarrus County on the Title VII claim because Plaintiff has sued Riley in his individual capacity only and not in his official capacity as sheriff; and (4) Plaintiff's Title VII claim

must, therefore, be dismissed. For the following reasons, the court finds that Plaintiff has not alleged a Title VII claim against Riley individually, that Plaintiff has properly named the "Sheriff of Cabarrus County" as Plaintiff's employer in the amended complaint, and that Defendants' argument has no merit.

 Here, Defendant Sheriff Riley presents the above argument as an individual/official capacity issue. The issue is more accurately framed in terms of whether Plaintiff has properly named the "Sheriff of Cabarrus County" as Plaintiff's "employer" within the meaning of Title VII. It is clear to this court that she has. In North Carolina, the duly elected sheriff of a county under N.C. GEN. STAT. § 162–1 has "the exclusive right to hire, discharge, and supervise the employees in his office." N.C. GEN. STAT. § 153A–103. Thus, in North Carolina, each county's sheriff is an "employer" within the meaning of Title VII and must be named as a defendant in a Title VII suit. Here, Plaintiff has clearly named "D. Brad Riley, Sheriff of Cabarrus County" as a Defendant. Furthermore, Plaintiff refers throughout the amended complaint to the Sheriff's Department and Sheriff Riley collectively as "Defendants" and as Plaintiff's "employers." Amended Compl. ¶¶ 4, 8, 10, 12, 16–18, 21, 22, 24–27, 29, 33, 36, 38. For instance, in support of the Title VII claim, Plaintiff alleges in the amended complaint that "Defendants were employers within the meaning of Title VII ..., having fifteen (15) or more employees ...." Amended Compl. ¶ 8. This court has found numerous Title VII cases within this circuit in which an individual defendant has been sued as the "Sheriff of [a named] County" and where the courts have consistently assumed that the office of sheriff was properly named as the plaintiffs' employer within the meaning of Title VII. *See Boat-*

*wright v. Good,* No. 02CV209–C, 2003 WL 22231194, at *2 (W.D.N.C. Aug. 6, 2003) (in a Title VII action, where the caption named "Daniel J. Good, As Sheriff of Rutherford County" as the defendant, assuming without discussion that the sheriff was properly sued as plaintiff's "employer" within the meaning of Title VII); *Vazquez v. Bedsole,* 888 F.Supp. 727, 732 (E.D.N.C. 1995) (in an action alleging intentional infliction of emotional distress and discrimination under the ADA and Title VII, where the caption stated that the sheriff was being sued "individually, and as Sheriff of Cumberland County," assuming without discussion that the office of sheriff was properly sued as plaintiff's "employer" within the meaning of Title VII and the ADA); *Hogan v. McCrary,* No. 4:90CV326, 1993 WL 405478, at *1 (M.D.N.C. May 27, 1993) (in a Title VII action, where the caption stated that the sheriff was being sued "Individually, and as Sheriff of Davidson County," assuming without discussion that the office of sheriff was properly sued as plaintiff's "employer" within the meaning of Title VII). The court sees no reason here to find that the Sheriff of Cabarrus County has not been properly sued as to Plaintiff's Title VII claim. Thus, I find that by naming "D. Brad Riley, Sheriff of Cabarrus County," as a Defendant, Plaintiff has properly named the office of the Sheriff of Cabarrus County as Plaintiff's employer within the meaning of Title VII.

■■■ The court next addresses whether Plaintiff has sued Sheriff Riley in his individual or official capacity as to his state law claims. The North Carolina courts have observed that "a pleading should 'clearly' state the 'capacity in which [a defendant is] being sued.'" *Warren v. Guilford County,* 129 N.C.App. 836, 839, 500 S.E.2d 470, 472 (1998) (quoting *Mullis v. Sechrest,* 347 N.C. 548, 554, 495 S.E.2d 721, 724 (1998)). To this extent, plaintiffs should include a clear statement of "capacity" in the caption, the allegations, and the

prayer for relief. *Mullis,* 347 N.C. at 554, 495 S.E.2d at 724–25. The North Carolina Supreme Court has held that, in the absence of a clear statement regarding capacity, courts should consider the following factors in determining whether a suit has been brought against a defendant in his individual or official capacity:

> The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.

*Meyer v. Walls,* 347 N.C. 97, 110, 489 S.E.2d 880, 887 (1997) (quoting Anita R. Brown Graham & Jeffrey S. Koeze, Immunity from Personal Liability under State Law for Public Officials and Employees: An Update, Loc. Gov't L. Bull. 67 (Inst. of Gov't, Univ. of N.C. at Chapel Hill Apr. 1995, at 7)); *see also Mandsager v. University of North Carolina at Greensboro,* 269 F.Supp.2d 662, 672 (M.D.N.C.2003) (applying *Meyer* to the plaintiff's state law claims). Additionally, a court may consider the caption of the complaint to determine the capacity in which a defendant has been sued. *See Wells v. North Carolina Dep't of Corr.,* 152 N.C.App. 307, 320–21, 567 S.E.2d 803, 813 (2002). Finally, the North Carolina Court of Appeals has noted that "in the absence of a clear statement of defendant's capacity a plaintiff is deemed to have sued a defendant in his official

capacity." *Reid v. Town of Madison*, 137 N.C.App. 168, 172, 527 S.E.2d 87, 90 (2000).

▮ Here, Plaintiff alleges state law claims for intentional infliction of emotional distress, wrongful discharge in violation of public policy, and negligent supervision/retention against Defendant Riley. For the following reasons, I find that the allegations in the amended complaint indicate that Riley is being sued in his official capacity as Sheriff of Cabarrus County as to these state law claims. First, the caption states that the suit is brought against the "Cabarrus County Sheriff's Department" and against "D. Brad Riley, Sheriff of Cabarrus County," thus, indicating no clear statement in the caption that Sheriff Riley is being sued in his individual capacity. Furthermore, Plaintiff repeatedly refers throughout the amended complaint to the Sheriff's Department and Sheriff Riley collectively as "Defendants," thus, suggesting an official capacity suit as to Riley. *See Oakwood Acceptance Corp. v. Massengill*, 162 N.C.App. 199, 210, 590 S.E.2d 412, 421 (2004) (concluding that the defendant was being sued in his official capacity where, although the caption of the complaint did not specify whether the defendant was being sued individually or officially, it did "identify the defendant as 'David Womack, Tax Collector for Johnston County, North Carolina,' suggesting an official capacity suit," and where the complaint did "not set forth a claim for relief against Womack separately, but rather state[d] claims collectively against Womack and Johnston County"). Additionally, in the prayer for relief on the state law claims, the amended complaint seeks monetary damages from both Defendant Riley and the Cabarrus County Sheriff's Department collectively, again suggesting an official capacity suit against

Defendant Riley. *Cf. Wells*, 152 N.C.App. at 321, 567 S.E.2d at 813 (where the prayer for relief sought damages against one defendant and not others on the plaintiff's emotional distress claim, this indicated an individual capacity suit). It is true that Plaintiff has requested punitive damages against Defendant Riley, which suggests an individual capacity suit since, absent some statutory authority, punitive damages are not allowed against governmental entities in North Carolina. Plaintiff also asks, however, for punitive damages against the Cabarrus County Sheriff's Department. Thus, it appears that Plaintiff's request for punitive damages as to Defendant Riley is less of an indication that Plaintiff intended to sue Riley in his individual capacity than it is an indication that Plaintiff's counsel was unaware that punitive damages were not allowed against Defendant Riley in his official capacity.[1] Thus, I do not find that the mere fact that Plaintiff has requested punitive damages against Defendant Riley indicates an individual capacity suit.

▮ Finally, I note that Plaintiff alleges in the amended complaint that "D. Brad Riley and Cabarrus County Sheriff's Department have adopted a plan of insurance pursuant to NCGS § 153A–435 and have waived its [sic] immunity from civil liability." Amended Compl. ¶ 5. A plan of insurance under N.C. GEN. STAT. § 153A–435 waives the sovereign immunity of local and state officials and entities in their official capacities and has no application to defendants being sued in their individual capacities. *See Phillips v. Gray*, 163 N.C.App. 52, 592 S.E.2d 229, 232 (2004). Thus, if Plaintiff were suing Riley in his individual capacity on the state law claims, it would make no sense to implicate the purchase of liability insurance under section 153A–435

---

1. Indeed, Plaintiff insists in her brief that she did not intend to sue Riley in his individual capacity. *See* Pl.'s Br. Opp. Mot. Dismiss at 6.

as to him. For all these reasons, I find that Plaintiff has sued Defendant Riley in his official capacity only as to the state law claims.

*Defendants' Motion to Dismiss the Title VII Claim Against Defendant Riley on the Ground that He Was Not Named in the EEOC Charges*

 Defendants next contend that Plaintiff's Title VII claim against Defendant Riley should be dismissed because he was not specifically named as Plaintiff's employer in the EEOC charges. This argument fails. It is true generally that before a defendant may properly be sued under Title VII, he must first be administratively charged by being named in a complaint to the EEOC.[2] *See Mickel v. South Carolina State Employment Service,* 377 F.2d 239, 241–42 (4th Cir.1967). Courts have recognized, however, several exceptions to this requirement. *Brown v. Scotland County,* No. 1:01CV00936, 2003 WL 21418099, at *9 (M.D.N.C. June 17, 2003). The first is when the named and unnamed parties have substantially the same identity or have an agency relationship. The second is if the EEOC could infer from the facts in the charge that the unnamed defendant violated Title VII. *Id.* Additionally, courts do not generally dismiss an unnamed party who had notice of the EEOC conciliatory efforts and participated in the EEOC proceedings. *Bostic v. Wall,* 588 F.Supp. 994, 997 (W.D.N.C. 1984).

Here, in her EEOC charge of discrimination, Plaintiff listed the Cabarrus County Sheriff's Department on the line instructing her to name the "Employer, ... or State or Local Government Agency That I Believe Discriminated Against Me or Others." *See* Pl.'s Br. Opp. Mot. Dismiss, Ex. A. Although Sheriff Riley is not also listed on that line, Plaintiff clearly named him in another section of the charges, in which she indicated that the alleged discriminatory act occurred on March 7, 2003, and that Sheriff Riley terminated her employment on that date. *See* Pl.'s Br. Opp. Mot. Dismiss, Ex. A. Thus, it appears to the court that Sheriff Riley was in fact named in the EEOC charges. In any event, the EEOC could clearly infer from the facts in the charge that Sheriff Riley was being charged with having violated Title VII. Furthermore, Sheriff Riley and the Sheriff's Department are represented by the same counsel, Sheriff Riley participated in the EEOC proceedings, and "there is a complete absence of evidence that Sheriff [Riley] was in some way prejudiced because his name was not placed on a certain line in the charge." *Bostic v. Wall,* 588 F.Supp. at 997; *see also Boatwright,* 2003 WL 22231194, at *2 ("Accordingly, under the case law imputing notice of a lawsuit to a party based on the 'shared attorney' method of imputing notice, Sheriff Good was also on notice of the institution of the action."); *Frazier v. Smith,* 12 F.Supp.2d 1362, 1369 (S.D.Ga.1998) (where the Camden County Sheriff's Department was named in the EEOC charges as the party who discriminated against the plaintiff, the court refused to dismiss the Camden County Sheriff as a defendant because he was clearly on notice of the claim). Thus, the Title VII claim against Sheriff Riley will not be dismissed based on Defendants' argument that he was not named in the EEOC charge.

 Furthermore, I find that Plaintiff has stated a Title VII claim for sex

---

2. This requirement has the two-fold purpose of providing notice to the charged party and of insuring that all relevant parties are brought before the EEOC so that the agency may attempt to secure voluntary compliance with the statute. *Brewster v. Shockley,* 554 F.Supp. 365, 368 (W.D.Va.1983).

discrimination based on hostile work environment and for retaliation sufficient to withstand Defendants' motion to dismiss. To state a prima facie claim for sex discrimination based on a hostile work environment, a plaintiff must show: (1) that she was harassed "because of" her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently pervasive or severe as to create an abusive work environment; and (4) that some basis exists for imputing liability to the employer. *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 241 (4th Cir.2000). Furthermore, to establish a prima facie case of retaliation, the employee must show (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal connection between the protected activity and the adverse employment action. *See King v. Rumsfeld,* 328 F.3d 145, 150–51 (4th Cir.2003). An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" under Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *See* 42 U.S.C. § 2000e–3(a) (2001); *Laughlin v. Metropolitan Washington Airports Auth.,* 149 F.3d 253, 258–59 (4th Cir.1998). An employment discrimination plaintiff need not, however, plead these two prima facie cases in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (discussing the liberal pleading standard applied to Title VII claims). All that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), giving the opposing party "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Here, Plaintiff alleges that soon after she became employed as a deputy sheriff, male employees "began a campaign of sexual harassment towards" her; that she "complained about the unlawful harassment"; that Defendants "did not rectify the situation and no remedial action was taken by Defendants to stop or prevent the offending behavior"; that "[t]he conduct of the harassing male co-workers continued"; that "[o]n or about March 5, 2003, Plaintiff further complained about the ongoing harassment"; and that "[o]n or about March 7, 2003, Plaintiff was discharged from her position as Deputy Sheriff with Defendants as a result of and in retaliation for her complaints about being sexually harassed." Amended Compl. ¶¶ 10–15. Plaintiff further alleges that Defendants discriminated against her "on the basis of her sexual identity and gender by actions, including, but not limited to, offensive language, offensive gestures, refusal to address the hostile work environment and denying Plaintiff opportunities that were afforded to her male counterparts although it had the obligation, opportunity, and means to do so." Amended Compl. ¶ 20. Considering the liberal standards for pleading on a motion to dismiss, I find that Plaintiff has alleged hostile work environment and retaliation claims under Title VII sufficient to withstand Defendants' motion to dismiss. *See Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.,* 320 F.Supp.2d 378, 406–07 (M.D.N.C.2004) (retaliation claim); *Alston v. North Carolina A & T State Univ.,* 304 F.Supp.2d 774, 779–80 (M.D.N.C.2004) (hostile work environment claim).

*Whether Defendant Sheriff Riley Is Shielded By Sovereign Immunity as to Plaintiff's State Law Tort Claims*

■ Defendants next contend that the state law tort claims against Sheriff

Riley are subject to dismissal because Plaintiff failed to bring suit on Sheriff Riley's surety bond and she has therefore failed to show that Sheriff Riley has waived his immunity. For the following reasons, the court does not agree. First, Defendants correctly point out that "[i]n the absence of some statute that subjects them to liability, the State, its municipalities, and the officers and employees thereof sued in their official capacities, are shielded from tort liability when discharging or performing a governmental function." *Dawes v. Nash County*, 148 N.C.App. 641, 643, 559 S.E.2d 254, 256 (2002). Furthermore, there is no doubt that North Carolina sheriffs are considered public officials for purposes of sovereign immunity. *Summey v. Barker*, 142 N.C.App. 688, 691, 544 S.E.2d 262, 265 (2001). Finally, it is also well established that a plaintiff bringing claims against a governmental entity and its employees acting in their official capacities must allege and prove that the officials have waived their sovereign immunity or otherwise consented to suit. *Sellers v. Rodriguez*, 149 N.C.App. 619, 623, 561 S.E.2d 336, 339 (2002). By failing to do so, the plaintiff does not state a cognizable claim against either the official or the governmental entity. *Id.*

■ North Carolina law provides two avenues through which a sheriff's sovereign immunity may be waived. First, N.C. GEN. STAT. § 153A–435 permits each county in North Carolina to insure its officers, agents, or employees against negligent or intentional damages to person and property.[3] *See Smith v. Phillips*, 117 N.C.App.

378, 451 S.E.2d 309 (1994). Thus, a sheriff will be deemed to have waived his immunity to the extent to which he is covered by a county's liability insurance policy purchased under section 153A–435. Second, a sheriff may waive his immunity by purchasing a sheriff's bond pursuant to N.C. GEN. STAT. § 58–76–5, which provides that "every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State . . . ." Indeed, pursuant to N.C. GEN. STAT. § 162–8, every sheriff in North Carolina is required to purchase a bond, and the sheriff will be liable on tort claims to the extent of the amount of the bond.[4] N.C. GEN. STAT. § 58–76–5 (2003). The North Carolina courts have further held, however, that to recover on a sheriff's bond, a plaintiff must join the bond surety as a party to any action against the sheriff. *Messick v. Catawba County*, 110 N.C.App. 707, 715, 431 S.E.2d 489, 494 (1993) (stating that the statutory requirement of a bond removes the sheriff "from the protective embrace of governmental immunity, but only where the surety is joined as a party to the action"); *Sellers v. Rodriguez*, 149 N.C.App. 619, 623, 561 S.E.2d 336, 339 (2002) (stating that "in addition to a county waiving its immunity under G.S. § 153A–435, a sheriff may also waive governmental immunity by purchasing a bond," but noting that "a sheriff's immunity is removed only where the surety is joined as a party to the action").

---

**3.** Although North Carolina sheriffs are not considered to be county "employees" for other purposes, counties often do include sheriffs in their liability policies purchased under section 153A–435.

**4.** The North Carolina Court of Appeals has noted that "[b]y expressly providing for this

cause of action, the General Assembly has abrogated common law immunity where a public official causes injury through 'neglect, misconduct, or misbehavior' in the performance of his official duties or under color of his office." *Slade v. Vernon*, 110 N.C.App. 422, 427–28, 429 S.E.2d 744, 747 (1993).

■ Finally, the North Carolina courts have made clear that a plaintiff may pursue recovery for tortious actions by the sheriff *under both* the sheriff's bond pursuant to N.C. GEN. STAT. § 58-76-5 *and* the county's liability insurance pursuant to N.C. GEN. STAT. § 153A-435. *Smith v. Phillips*, 117 N.C.App. at 383-84, 451 S.E.2d at 313-14; *Goodwin v. Furr*, 25 F.Supp.2d 713, 716 (M.D.N.C.1998); *Summey*, 142 N.C.App. at 691, 544 S.E.2d at 265. Of course, if a plaintiff neither alleges waiver through the surety or the purchase of liability insurance, then the plaintiff will be barred by sovereign immunity from recovering against the defendant. *See Wright v. Hill*, No. 1:03CV109, 2004 WL 1618591, at *5 (M.D.N.C. July 16, 2004) (where the plaintiff failed to allege waiver of sovereign immunity because he neither named the sheriff's surety as a party to the suit nor otherwise pled immunity through the county's purchase of liability insurance); *Seaton v. Owens*, No. 1:02CV00734, 2003 WL 22937693, at *2 (M.D.N.C. Dec. 8, 2003) (same); *see also Mellon v. Prosser*, 126 N.C.App. 620, 623, 486 S.E.2d 439, 442 (1997) (stating that the immunity of a deputy sheriff and a sheriff were not waived where the "plaintiff failed to join [the defendant deputy sheriff's] surety, *or otherwise plead or prove any waiver of immunity* by the [defendant] sheriff or his officers") (emphasis added), *rev'd on other grounds*, 347 N.C. 568, 494 S.E.2d 763 (1998).

■ Here, Plaintiff has clearly alleged in the amended complaint that Defendant Sheriff Riley has waived his immunity from civil liability through a plan of insurance pursuant to N.C. GEN. STAT. § 153A-435. Amended Compl. ¶ 5. This allegation of waiver, which the court must take as true for the purpose of this motion, is sufficient to overcome Defendants' motion to dismiss based on sovereign immunity. Since Plaintiff has not, however, named Sheriff Riley's surety as a defendant, immunity under any bond issued pursuant to N.C. GEN. STAT. § 58-76-5 has not been waived.[5] Thus, Plaintiff's damages will be limited to the extent to which Sheriff Riley is covered under any liability insurance policy purchased under N.C. GEN. STAT. § 153A-435.[6] Finding that Plaintiff has sufficiently alleged waiver of immunity, the court will now address the merits of Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's state law tort claims.

*Plaintiff's Claim for Intentional Infliction of Emotional Distress*

■ The court first addresses whether Plaintiff states a claim for intentional infliction of emotional distress ("IIED"). The essential elements of an IIED claim are "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27

**5.** North Carolina courts have noted, however, that the failure to name the surety as a defendant is "easily corrected by amendment." *Sellers*, 149 N.C.App. at 624, 561 S.E.2d at 339.

**6.** To the extent that Defendants are attempting to argue that the sheriff's surety is a necessary and indispensable party in this lawsuit and therefore dismissal is required regardless of whether Plaintiff has alleged waiver of sovereign immunity through section 153A-435, this argument is not supported by

North Carolina case law. Indeed, this court has found several North Carolina cases in which a sheriff's surety was not named as a defendant, but where the case nevertheless proceeded against the defendant sheriff because the plaintiff otherwise sufficiently pled waiver of immunity through the purchase of liability insurance under section 153A-435. *See Phillips v. Gray*, 163 N.C.App. at 55-56, 592 S.E.2d at 232; *Marlowe v. Piner*, 119 N.C.App. 125, 127, 458 S.E.2d 220, 222 (1995).

(1992) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). Conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986). Whether conduct meets this standard is a question of law. *Lenins v. K–Mart Corp.*, 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990).

 North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context, and termination, allegedly in violation of federal law alone, does not necessarily constitute extreme and outrageous conduct under North Carolina law. *Jackson v. Blue Dolphin Communications of North Carolina, L.L.C.*, 226 F.Supp.2d 785, 794 (W.D.N.C.2002) (finding that the defendants' alleged conduct was not extreme and outrageous under North Carolina law where the plaintiff alleged that the defendants asked her to sign a false affidavit; when she refused, one of the defendants made a racially discriminatory statement to her; and, soon afterward, she was dismissed from her position). Furthermore, under North Carolina law, acts of discrimination are not necessarily "extreme and outrageous." *See Frazier v. First Union Nat'l Bank*, 747 F.Supp. 1540, 1553 (W.D.N.C.1990) (holding that allegations of race and sex discrimination did not show extreme and outrageous conduct under North Carolina law).

Here, Plaintiff alleges that shortly after she was hired as a deputy sheriff, her male co-workers at the sheriff's department "began a campaign of sexual harassment" against her. *See* Amended Compl. ¶¶ 10–16, 20. Plaintiff alleges that they discriminated against her "on the basis of her sexual identity and gender by actions, including, but not limited to, offensive language, offensive gestures." Plaintiff alleges that she complained about the unlawful harassment, but that Sheriff Riley "did not rectify the situation and no remedial action was taken ... to stop or prevent the offending behavior." Plaintiff alleges that the "conduct of the harassing male co-workers continued," Plaintiff "further complained about the ongoing harassment," and Plaintiff was then fired "as a result of and in retaliation for her complaints about being sexually harassed." Plaintiff further alleges that Sheriff Riley refused to address and remedy the hostile work environment created by Plaintiff's male co-workers; that he fired her in retaliation for complaining about the sexual harassment; and that he denied "Plaintiff opportunities that were afforded to her male counterparts." *See* Amended Compl. ¶¶ 10–16, 20. Here, Plaintiff's allegations simply do not rise to the level of outrageousness that the North Carolina courts have deemed necessary to provide a basis for recovery for intentional infliction of emotional distress. *See Thomas v. Northern Telecom, Inc.*, 157 F.Supp.2d 627, 635 (M.D.N.C.2000) (finding that the defendant's alleged conduct was not extreme and outrageous where the plaintiff alleged, among other things, that the defendant created a hostile work environment and discharged her in retaliation for exercising her rights under Title VII). Thus, Plaintiff's IIED claim is dismissed.

*Plaintiff's Claim for Wrongful Discharge in Violation of Public Policy*

 The court next considers whether Plaintiff states a claim for wrongful discharge in violation of public policy. Defendants argue that Plaintiff fails to state a claim for wrongful discharge because Plaintiff was an employee at will and therefore could be discharged for any reason or for no reason at all. North Car-

olina courts, however, have established that a wrongful discharge in violation of the state's public policy is an *exception* to North Carolina's at-will employment rule. *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). Thus, an employee's at-will status does not automatically preclude her from bringing a claim for wrongful discharge in violation of public policy. To state a claim for wrongful discharge in violation of public policy, an employee has the burden of pleading that his dismissal occurred for a reason that violates the public policy of North Carolina. *Salter v. E & J Healthcare, Inc.*, 155 N.C.App. 685, 693, 575 S.E.2d 46, 51 (2003). "Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Coman*, 325 N.C. at 175 n. 2, 381 S.E.2d at 447 n. 2. Although this definition of public policy "does not include a laundry list of what is or is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992) (footnote omitted).

Here, North Carolina clearly has an express, statutory policy against sexual harassment, set forth in N.C. GEN. STAT. § 143–422.2 (2003), and which states that "[i]t is the public policy of this State to protect . . . the right . . . of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . sex."[7] *Whitt v. Harris Teeter, Inc.*, 598 S.E.2d 151, 156 (N.C.App. 2004) (stating that "[a] discharge based on sexual harassment . . . offends the public policy of this State and may properly support a wrongful discharge claim in violation of public policy"); *Guthrie v. Conroy*, 152 N.C.App. 15, 19–20, 567 S.E.2d 403, 407 (2002) (stating that "the right to be free of sexual harassment in the workplace . . . is implicated in our State declaration of public policy"). Thus, North Carolina clearly recognizes, as an exception to the at-will employment rule, a claim for wrongful discharge in violation of public policy based on allegations that a plaintiff was fired because of her sex.[8] North Carolina has no written public policy, however, with respect to *retaliation for opposing sexual discrimination in the workplace.* Thus, there is no recognized claim in North Carolina for wrongful discharge based on a retaliatory discharge for complaints about sex discrimination.[9] *See, e.g.,*

---

7. Section 143–422.2 is part of the North Carolina Equal Employment Practices Act. *See* N.C. GEN. STAT. §§ 143–422.1 to –422.3.

8. The North Carolina Supreme Court has ruled that the "ultimate purpose of . . . G.S. 143–422.2 and Title VII . . . is the same," and thus the state statute is co-extensive with the federal statute, evaluated under the same standards of evidence and principles of law. *North Carolina Dep't of Corr. v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). Thus, a plaintiff's failure to demonstrate his discrimination claim under Title VII will also result in dismissal of a North Carolina wrongful-discharge claim arising out of the same facts and circumstances. *See, e.g., Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir.1995) (citing *Gibson* ).

9. I note that the North Carolina Court of Appeals recently held in *Whitt v. Harris Teeter, Inc.* that a plaintiff sufficiently alleged that she was constructively discharged because her "condition [due to sexual harassment] forced her to resign from her employment with Defendant" and, thus, the plaintiff "presented sufficient evidence that her termination of employment was predicated upon sexual harassment in violation of public policy." *See Whitt*, 598 S.E.2d at 156. I find no definitive statement in *Whitt*, however, indicating that the North Carolina courts now recognize a claim for wrongful discharge in violation of public policy based on a termination in retaliation for complaining about sex discrimination. In *Whitt*, the court focused on the fact that the employer did noth-

*Stout v. Kimberly Clark Corp.*, 201 F.Supp.2d 593, 607 (M.D.N.C.2002) ("Stout has not presented the Court with any North Carolina court decision that has ruled that a discharge as retaliation for an employee's protest of the employer's discriminatory activities violates the state's public policy. Accordingly, the Court joins the other federal district courts who have found no public policy exception for retaliatory discharge and finds that Plaintiff cannot establish this element of the cause of action."); *Mullis v. Mechanics & Farmers Bank*, 994 F.Supp. 680, 688 (M.D.N.C. 1997) (stating that "no North Carolina court has interpreted [N.C. Gen. Stat. § 143–422.1] to include a claim for discharge in retaliation for complaining about discriminatory employment practices").

 Here, in support of her wrongful discharge claim, Plaintiff alleges that soon after she became employed as a deputy sheriff, male employees "began a campaign of sexual harassment towards" her; that she "complained about the unlawful harassment"; that Defendants "did not rectify the situation and no remedial action was taken by Defendants to stop or prevent the offending behavior"; that "[t]he conduct of the harassing male co-workers continued"; that "[o]n or about March 5, 2003, Plaintiff further complained about the ongoing harassment"; and that "[o]n or about March 7, 2003, Plaintiff was discharged from her position as Deputy Sheriff with Defendants *as a result of and in retaliation for her complaints about being sexually harassed.*" Amended Compl. ¶¶ 10–15 (emphasis added). The facts in this case are almost identical to those in *Leach v. Northern Telecom, Inc.*, in which the plaintiff alleged that the defendant em-

ployer had violated the public policy set forth in section 143–422.2 "insofar as it terminated her because of her 'opposition to what she believed in good faith to be a number of sexually discriminatory employment practices by [the defendant].'" 141 F.R.D. 420, 426 (E.D.N.C.1991). There, the federal district court dismissed the plaintiff's claim for wrongful discharge in violation of public policy, stating:

> This allegation does not implicate the public policy concerns expressed in section 143–422.2. The public policy expressed there relates to employment discrimination on account of race, color, sex, etc. The statute does not express a public policy concerning retaliation for opposition to discriminatory practices.

*Id.* Here, as was the case in *Leach*, Plaintiff's claim for wrongful discharge in violation of public policy is based on retaliatory discharge. Thus, she does not state a claim for wrongful discharge, and this claim is dismissed. *Accord Curran v. First Union Mortgage Corp.*, No. 5:95–CV–975–BR (3), 1997 WL 907909, at *1 (E.D.N.C. Mar. 24, 1997) (discussing *Leach*).

*Plaintiff's Claim Against Sheriff Riley for Negligent Supervision or Retention*

 Plaintiff also brings a claim against Sheriff Riley for negligent supervision or retention. To state a claim for negligent supervision or retention, a plaintiff must allege that the defendant's employees committed tortious acts of which the defendant had actual or constructive knowledge. *See Waddle*, 331 N.C. at 87, 414 S.E.2d at 29. This court has already found that Plaintiff has not stated claims for the state law torts of IIED and wrong-

ing about the sexual harassment and that the sexual harassment itself ultimately made the plaintiff's working conditions so unbearable that she resigned, or was constructively discharged. Until a clearer statement from the

North Carolina courts emerges, I will adhere to this court's previous holdings regarding wrongful discharge claims based on retaliatory firing.

ful discharge; thus, these state law tort claims cannot serve as the "tortious acts" element of her negligent supervision/retention claim. *See, e.g., Kimes v. Laboratory Corp. of Am.,* 313 F.Supp.2d 555, 569 (M.D.N.C.2004) (stating that since the plaintiff's claims regarding emotional distress were the only torts alleged against the defendant's employees, and since the plaintiff did not demonstrate any evidence to support those claims, she "likewise failed to demonstrate any tortious conduct, an essential element of [her negligent supervision/retention claim]"). The issue, then, is whether the alleged Title VII violations can serve as the "tortious acts" element of Plaintiff's negligent supervision/retention claim. So far, the district courts in this circuit, including this court, have assumed that Title VII violations can serve as the "tortious act" element of a state law negligent supervision/retention claim. The courts have held as such on the basis that this circuit's court of appeals has so far declined to rule on the issue and because "no North Carolina Court has ever stated that a sexual harassment claim *cannot* support a claim for negligent supervision/retention." *Barbier v. Durham County Bd. of Educ.,* 225 F.Supp.2d 617, 630 n. 11 (M.D.N.C.2002) (emphasis added); *see also Smith v. First Union Nat'l Bank,* 202 F.3d 234, 250 n. 12 (4th Cir.2000) (stating that "we decline to decide whether a Title VII violation can be the underlying tort for a negligent supervision or retention claim under North Carolina law") (citing *Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 774 (4th Cir. 1997) ("On appeal, [Plaintiff] argues that a violation of Title VII satisfies the underlying tort requirement [for a negligent supervision/retention claim]. Because we find neither an underlying tort nor a violation of Title VII, we need not address the question.")). Here, Plaintiff has alleged that her male co-workers engaged in sexual harassment against her in violation of Title VII and that Sheriff Riley knew about their behavior. Amended Compl. ¶ 24. Taken in the light most favorable to Plaintiff, the court finds, at this early stage, that Plaintiff has sufficiently alleged that Plaintiff's co-workers committed tortious acts and that Sheriff Riley had actual or constructive knowledge of those acts. Thus, Defendants' motion to dismiss Plaintiff's negligent supervision/retention claim is denied.

### Plaintiff's Claim for Punitive Damages

Defendants have also moved to dismiss Plaintiff's claim for punitive damages. It is well settled that under North Carolina public policy, in the absence of a statute indicating otherwise, a plaintiff may not recover punitive damages against government entities. *Long v. City of Charlotte,* 306 N.C. 187, 293 S.E.2d 101 (1982). Here, Plaintiff has not alleged any statutory basis for assessing punitive damages against Sheriff Riley for any of Plaintiff's state law claims. Furthermore, as for Plaintiff's Title VII claim, a plaintiff is not entitled to recover punitive damages against a government, government agency, or a political subdivision in an action brought under Title VII. *See* 42 U.S.C. § 1981(a)(b)(1). Thus, Plaintiff's claim for punitive damages is dismissed.

### Quality of the Briefs

Finally, I cannot help but observe that the court's work in adjudicating this motion to dismiss was needlessly prolonged by the shoddy advocacy demonstrated by both attorneys in this case. The briefs contain scant legal analysis, with little authority presented to support each side's arguments. For instance, in support of the motion to dismiss Plaintiff's wrongful discharge claim, defense counsel presented the court with the following, five-sentence argument:

Plaintiff's last cause of action alleges wrongful termination in violation the [sic] public policy of the State of North Carolina. Like her other causes, she fails to state a complaint [sic] in which relief can be granted in this instance. Under North Carolina Law, employees of the Sheriff serve at the pleasure of the Sheriff. As such they are employees at will and can be discharged for any reason or no reason at all. Courts have dismissed Deputies' claims for wrongful termination. *See, Hughes,* 913 F.Supp. at 429–430; *Buchanan v. Hight,* 133 N.C.App. 299, 515 S.E.2d 225 (1999); *Venable v. Vernon,* 592 S.E.2d 256 (2004).

*See* Defs.' Br. Supp. Mot. Dismiss, at 5–6. First of all, if defense counsel had adequately researched North Carolina law regarding claims for wrongful discharge, he would have discovered, as this court has already noted, that a claim for wrongful discharge in violation of public policy is actually a well-recognized *exception* to the rule that an at-will employee in North Carolina can be discharged for any reason or no reason at all. *See Coman,* 325 N.C. at 175, 381 S.E.2d at 447. Thus, counsel's argument that Plaintiff's at-will employment status definitively precludes her from bringing a claim for wrongful discharge in violation of public policy is simply not an accurate statement of North Carolina law. Furthermore, counsel's next stark observation that previous "[c]ourts have dismissed Deputies' claims for wrongful termination" does nothing at all for the court, as counsel does not give any indication of the circumstances that justified dismissal in those cases. So what if some courts have dismissed such claims in certain circumstances? What were the particular facts in those cases and how do they apply to the facts in this case? Does counsel intend to imply that the wrongful discharge claim in this case must be dismissed solely on the basis that courts have

dismissed such charges before in other cases? Surely not. Finally, I note that counsel has cited to a North Carolina Court of Appeals opinion, *Venable v. Vernon,* as being located at 592 S.E.2d 596 (2004). The correct citation for *Venable* is 162 N.C.App. 702, 592 S.E.2d 256 (2004).

So as not to pick solely on Defendants' counsel, I note that Plaintiff's counsel's briefing was similarly shoddy. For instance, in response to Defendants' argument that dismissal is proper because Plaintiff sued Sheriff Riley in his individual capacity only, counsel first tells the court that she "named [Sheriff Riley] in her Amended Complaint as instructed by Defense Counsel," and she complains that defense counsel should not now be allowed to contest the manner in which she styled the amended complaint. *See* Pl.'s Br. Opp. Mot. Dismiss at 5. An attorney is obligated to conduct her own, independent research to determine the proper parties to be sued in a lawsuit and in what capacity they should be sued. Simply relying on opposing counsel or the court to inform counsel how to style and draft a lawsuit is not only lazy, but it also certainly falls short of counsel's professional responsibility to her client and to the court. Plaintiff's counsel also argues in the brief that Plaintiff has in fact sued Sheriff Riley in his official capacity. To support this argument, counsel states that the caption in the amended complaint "clearly enunciates that D. Brad Riley, Sheriff of Cabarrus County is the Defendant"; that "throughout the Amended Complaint, the Plaintiff refers to her employer and or employment as a Deputy Sheriff employed by the Sheriff of Cabarrus County," and that "[a]t no time in her complaint does Plaintiff state or even allege she is bringing an action against D. Brad Riley as an individual or in an individual capacity." *See* Pl.'s Br. Opp. Mot. Dismiss at 6. The clear implication of these statements is that all of these factors indi-

cate that Sheriff Riley has been sued in his official capacity only. In the brief, however, Plaintiff's counsel has not cited a single case to support this proposition, despite that there are a plethora of cases addressing the very issue of how to determine whether allegations in a complaint indicate that a defendant is being sued in his official, or individual capacity, or both. Counsel was clearly under an obligation to research and discuss these cases in Plaintiff's brief. Similarly, in opposing Defendants' argument that Sheriff Riley should be dismissed because he was not named in the EEOC charges, Plaintiff's counsel argues, without providing a single citation to authority, that Sheriff Riley was clearly on notice of the EEOC charges. *See* Pl.'s Br. Opp. Mot. Dismiss at 8–9. Again, counsel points to no authority whatsoever to support her implied argument that actual notice is enough to excuse the failure to name a defendant in an EEOC charge. As the court's discussion above demonstrates, there is a substantial amount of case law authority addressing the issue of who must be named in an EEOC complaint as well as the recognized exceptions.

Finally, I note that in the last sentence of her individual/official capacity argument, Plaintiff's counsel asserts that "[f]or these reasons and others including but not limited to common-sense, Plaintiff asks this Court not [sic] dismiss this action as she has properly named and served the Defendant." *See* Pl.'s Br. Opp. Mot. Dismiss at 6. First of all, this court reminds counsel that courts render judicial decisions based on legal precedent, not mere appeals to "common sense." [10] Thus, it does the court no good in the world for counsel to ask the court to simply rely on common sense in making its decision. Furthermore, counsel argues in her brief that

there are "other" reasons, in addition to the ones she has supplied to the court, for denying Defendants' motion to dismiss. If there were, indeed, other reasons to deny Defendants' motion to dismiss, then it was counsel's responsibility to articulate those reasons to the court in her brief and to back up those reasons with legal authority.

In sum, neither counsel has fulfilled their obligations to their clients or to the court in their respective briefs on Defendants' motion to dismiss. It was counsels' duty, not the court's, to conduct the preliminary research into the issues raised in this motion to dismiss; indeed, this is the primary reason for the briefing requirement. Under this court's Local Rule 7.3, most motions must be accompanied by a brief, and the responses to those motions must also be accompanied by a brief. Furthermore, Local Rule 7.2 states that all briefs filed with this court shall contain: (1) a statement of the nature of the matter before the court; (2) a concise statement of the facts; (3) a statement of the question of questions presented; (4) and the argument, *which shall refer to all statutes, rules, and authorities relief upon.* Here, neither counsel adequately complied with section (4) because, as to many of their arguments, counsel simply failed to refer to any authorities. Under Local Rule 7.3(k), "[a] motion unaccompanied by a required brief may, in the discretion of the court, be summarily denied." Likewise, "[a] response unaccompanied by a required brief may, in the discretion of the court, be disregarded and the pending motion may be considered and decided as an uncontested motion." I read our court's local rules to mean that a "required brief" under Local Rule 7.3(k) must be something more than a string of unsupported arguments

---

**10.** Of course, one would hope that all judicial precedent would, in fact, be grounded in common sense.

hastily dashed onto paper. Indeed, a "required brief" within the meaning of Local Rule 7.3(k) is a document that adheres to the requirements clearly set forth in Local Rule 7.2. Thus, failure to present a brief in accordance with Local Rule 7.2 subjects counsel to the punitive measures of Local Rule 7.3. In other words, it is possible for a brief to be so inadequate that the court may consider that the party has submitted no brief at all and, therefore, may exercise the options outlined in Rule 7.3(k). Thus, I am hereby warning counsel for both parties that if this case proceeds to summary judgment, and if the quality of briefing does not significantly improve, the court will not take it upon itself to do the work of the lawyers. Instead, the court will simply re-order the lawyers to improve their briefs as many times as is necessary to ensure that both counsel comply with the briefing requirements of Local Rule 7.2. If counsel for either party fails to do so, the court will not hesitate to impose the appropriate measures under Local Rule 7.3 or to order other appropriate relief as the court deems necessary.

*CONCLUSION*

For the reasons stated above, the Cabarrus County Sheriff's Department is **DISMISSED** as a Defendant. Furthermore, all claims against Sheriff Riley, including the request for punitive damages, are **DISMISSED**, except for the state law claim for negligent supervision/retention and the Title VII claim alleging sex discrimination and retaliation. Thus, Defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part.

Finally, I note that while this motion was pending, Plaintiff filed a motion to amend her amended complaint to specifically allege that Defendant Riley is being sued in his official capacity and to add Cabarrus County as a Defendant. That motion to amend is now pending before the court (docket no. 14). Here, the court has already concluded that Defendant Riley has been sued in his official capacity. Furthermore, as a matter of law Cabarrus County was not Plaintiff's employer and therefore cannot be liable for the actions of the sheriff. *See Harter v. Vernon,* 953 F.Supp. 685, 692 (M.D.N.C.1996). Thus, granting Plaintiff's motion to amend her amended complaint would be futile, and the motion to amend is therefore **DENIED**.